Good morning, Your Honors, and may it please the Court, I'm Donald Horgan here on behalf of the petitioner, Randy Reyes, and I'd like to reserve, if I could, a minute for a rebuttal, Your Honor. In this case, the trial court, the state trial court, excluded the confession of Juan Ruiz, a co-defendant at Mr. Reyes' state criminal trial. That confession implicated Mr. Ruiz in the murder of William Tejada. At the same time, that confession advanced the defense of Mr. Reyes to the murder charge. Most importantly, for the purposes of this Court's AEDPA analysis, what I think is most important for this Court's AEDPA analysis is that the state courts, both the trial court and the Court of Appeal, applied the wrong state Supreme Court precedent in concluding that the confession was both unreliable and therefore inadmissible. They applied a test meant to protect the defendant's right to confront the witnesses against them, relying on Idaho v. Wright. Rather than a test meant to protect the right to present a defense, which is drawn from Chambers v. Mississippi, as we explained from Shea v. Canberra, Chambers was applicable because Mr. Reyes wanted the confession admitted in his own defense, but applying Wright, the state court's rule, the confession was inadmissible, essentially because Mr. Reyes didn't demonstrate its reliability was inadmissible. That was what the trial court characterized an awfully high standard of reliability. It didn't apply here. The correct standard was under Chambers, as explained in Shea, whether the confession of Mr. Reyes bore substantial or persuasive assurances of reliability. Yeah, my problem with this case, my problem with this case for your argument, is the careful exposition by the Superior Court as to why he thought the confession was to some degree unreliable. The Superior Court says, you know, under the circumstances here, we have Mr. Reyes who's trying to save his own skin, not only from going to the execution chamber, but he's also trying to save his own skin in jail if he gets if he gets life. And he knows that, in fact, precisely because of the crime he's just committed, that snitches get killed. So he's trying to go between Scylla and Charybdis, although I don't think that was the Superior Court's metaphor, of how do I compromise out these two things? And so I'll say, well, I did it, he did it too, but he didn't do it very much. And the judge says, you know, I'm not sure I trust that. I understand that the court said it didn't trust that very much, Your Honor. Preliminarily, the court's comments about what standard it was applying are incorrect. I mean, when it invokes Idaho, I think we'd all concede that that's the case. I mean, he also, in passing, in the course of analysis, he says, I don't think the only explanation for this confession is that it's truthful. I think it's not necessarily the case that it's reliable. The circumstances don't necessarily convince me of that. But beyond that, the key portion, a key portion, of the Ruiz confession has to do with the pre-incident dialogue between Mr. Reyes and Mr. Ruiz, where Mr. Reyes is saying, don't attack Mr. Tejada. Don't do it. It's not the right time. And I know the Attorney General has made a lot about what the motivation may have been for that statement. But the statement is what it is. Mr. Reyes is trying to persuade him not to go forward. And I submit that where the state trial court gets it wrong is that under the scenario it was Mr. Ruiz to take on and report that exchange. It could have, if, in fact, the motivation was, as the superior court surmised it to be, Mr. Ruiz was perfectly free to say, I'm the one who was the stabber. I'm the one who solely engaged in this attack. There were other people around, but I'm the one, the main person who did it. But why would he go the extra step and exculpate Mr. Reyes? Because that walked him, Mr. Ruiz, right into a first-degree murder prosecution, which is what he ended up with. The point being that if the trial court's belief as to what Mr. Ruiz was doing is correct, it doesn't explain Mr. Ruiz's having gone the extra step to inculpate himself and at the same time as to that exchange between Mr. Ruiz and Mr. Reyes. It had exactly that scenario before it. And in this court it said the very words in a statement that exculpated Chia are highly inculpatory of Wang, the defendant in that case. Wang said that after he informed Chia of the plot, Chia tried to talk him out of it. This admission inculpates Wang by removing all doubt as to his mens rea. Wang discussed the plot with his friend, was warned not to go through with it, and after plenty of time for reflection decided to not go through with it. The warning establishes that he was not furthering the conspiracy to kill, but quite the opposite, was discouraging his friend from participating. The inculpatory force of this statement with respect to Wang is obvious, and indeed the government conceded as much at its oral argument. That same analysis applies here, and again, I hope I'm addressing your question, Judge Fletcher, but I don't think that the superior court's analysis on that point is borne out by an objective analysis of what was going on here. And in fact, I don't think that's a defense of the wrong reliability standard. I don't think that's a defensible ruling or result. And of course, the second component of the trial court's error in analyzing this, approved by the State Court of Appeal, expressly approved by the State Court of Appeal, is the trial court's recognition that this confession by Mr. Ruiz is corroborated by physical evidence, but the trial court disregards that essentially. And the Court of Appeal says, you know what, yes, there was physical evidence corroborating this confession by Mr. Ruiz. Does that add to the reliability? Does that factor into the reliability analysis? No, it doesn't, because under Idaho v. Wright, a conference dictation clause case incorporated into some California state cases, under Idaho, the corroborating circumstances related to a confession are irrelevant. They don't matter. And that is contrary not only to Chambers, but it's made explicit in Shia. Shia goes on at some length about that. So in the trial court's analysis of the Ruiz confession, he's making not only one mistake by, in an objective sense, misanalyzing the question before it, it's also doubly erring by refusing to consider corroboration. So I'd say, I submit that that's a fundamental error and unreasonable under AEDPA by, more than unreasonable, not on one account, but on two. And that brings us to the issue of prejudice. One of the key points here, and it's a brief one, but it's the focus of the state appellate court's prejudice analysis, such as it was, was, look, Mr. Ruiz was convicted of second-degree murder, Mr. Ruiz convicted of first-degree murder. It was the jury distinguished between the relative liability of the two that we needn't, you know, consider anymore. But a key point here, Your Honor, and I don't think, I'm not sure it came through in the briefing enough. The main theory of liability pressed by the prosecutors in this case was that Mr. Ruiz had aided and abetted this murder, or that he had, it was, that it was liable under a natural or improbable consequences doctrine, meaning he had intended to commit an assault with a deadly weapon on Mr. Tejada. And I'd submit that evidence that Mr. Reyes was trying to dissuade Mr. Ruiz from proceeding with this act, any kind of attack on Mr. Tejada, is powerful evidence that he never intended the murder of Mr. Tejada. And it's equally powerful evidence that he never intended an assault with a deadly weapon on Mr. Tejada. Yeah, but why, I mean, even if we let the confession in, if we say that it was error to keep it out, part of the confession is that Mr. Reyes holds down the victim's legs. Well, you have, actually. While he's being stabbed. Actually, well, actually, it's not while he's being, I think it's before, it's actually quite unclear in the confession at what point that happens, Your Honor. I don't think that it's at all clear from the confession that that is happening during the confession. Mr. Reyes says, I think that you, I think that he was holding down. And the next day, of course, there's the statement where he says, where Mr. Reyes asks, in the confession, Mr. Ruiz reports, Mr. Reyes having said, are you still thinking about that? And Mr. Ruiz responds, what? I didn't say, what do you mean? Why are you asking me that? I didn't see you with blood all over you. It doesn't mean you had any part in this. Which I think is powerful evidence in his favor. Why don't you save your 45 seconds or whatever it is, and we'll let, give, make sure you have a chance to respond. Thank you, Your Honor. Thank you, Your Honors. And may it please the Court. Judge Fletcher makes a name for the record. Oh, I'm sorry, Your Honor. I always prefer anonymity. Bruce Ortega, Deputy Attorney General for the Respondent. I'll begin by assuming constitutional error. I'll go to the Brecht question. Did the exclusion of this confession have a substantial and injurious effect or influence on the verdict? And I say no. And I say no partly for one of the reasons Judge Fletcher offered, that in the confession, Mr. Ruiz says, Randy, I think, was holding him down, his leg. He was holding his leg. It happened so. Everyone was wearing dark clothes. Everyone looked the same. So I really can't. It was dark. Petitioner says, well, that's equivocal. Well, it's also corroborative, because two witnesses testified that Mr. Ruiz was holding down the victim during the attack. The defense counsel for Mr. Ruiz in his closing argument stated, if you believe that they were holding him down, that's murder. I'm not going to argue anything differently. So he would have had this part of the confession to deal with, as well as the two witnesses who testified that Mr. Ruiz was holding him down. We also have the evidence that, well, at one point, Mr. Ruiz told Mr. Ruiz, don't go through with this. Well, as the district court pointed out, it was, don't go through with this now. There's too many people around. Not probative evidence, according to the district court, that he didn't have the intent that this happen when subsequently it happened. And as the district court pointed out, Mr. Reyes's behavior subsequent to the attack rebutted any inference that his don't go through with this now statement would have had any effect on the verdict. Part of that being, Mr. Reyes drove the men to the beach, according to Mr. Ruiz, where they burned their clothes and disposed of the weapon, where then Mr. Reyes also said, oh, well, I got to go. I got to take these two clowns home. Not the sort of attitude you would take if you didn't want this vicious murder of one of your gang members to have occurred. And Mr. Horgan pointed out, well, the next day, Mr. Reyes or Mr. Ruiz told Mr. Reyes, you didn't have blood on you. But Mr. Reyes also testified that when Mr. Reyes, when Mr. Ruiz, in his confession, also stated that when Mr. Reyes was away driving the two clowns home, he was worried, well, what's going to happen if Randy gets stopped by the cops and he's got blood on him? So Mr. Ruiz was contradictory on the blood aspect. So it's our position that even had this confession come in, it would not have had a substantial injurious effect on the verdict. Unless the court has any questions, I'd submit it on that. Questions? No? Thank you. Thank you very much. You've saved some time, although I'm not sure you heard anything that surprised you. Go ahead. It's all yours. Just two very quick points. One, as to the witnesses, the other witnesses' testimony about Mr. Reyes, as we point out in our briefing, those are Alex Obregon and Mr. Hernandez, who cut a plea deal with the state in the case. As we point out, their testimony on that point was very contradictory. The testimony on that point was contradicted by earlier statements to police. It was equally vague and equivocal. In fact, one of them had earlier said another person, rather than Mr. Reyes, was holding the legs. But the key issue here is not whether or not Mr. Reyes at some point held the legs. The key issue, and for purposes of a Brecht analysis, is what could this confession have done for purposes of dividing Mr. Reyes' intent? And I would just urge the court to focus on that in disposing of the issue of prejudice. The other point, to the extent it's not been emphasized here, the Attorney General, in its district court briefing, did concede, in the course of one argument, that the Ruiz confession was relevant on the issue of intent. And so I just urge the court to locate that citation in our reply brief. Thank you, Your Honor. Thank both of you for your arguments. Reyes v. Duncan is now submitted for decision.
judges: Hug, Fletcher, Clifton